## Stewart and Foltz's Appeal.

1. A company authorized to build a railroad, and failing to obtain means, contracted with an individual to build a railroad solely for his own use on part of their route.　*Held*, the company had no power to make such contract, and the individual could not build such road.

2. A bill in equity was brought against the individual who had constructed his road under the contract, to restrain him from working it, and to remove it, the company not being made party; *held*, that the bill would lie against the defendant alone, for creating a nuisance to the plaintiff's property.

3. A single trespass, or several, not coupled with circumstances indicating that they were to be repeated continuously, is generally redressed by a common-law action.　But where trespasses are constantly recurring, and threatened to be continued, they may be redressed by injunction.

4. Corporations cannot do anything outside of the powers expressly given in their charters, which are to be strictly construed.

5. The grant of corporate powers cannot be sold or assigned without express authority.

6. The plaintiffs had brought an action of trespass against the defendant and another for breaking their close, constructing the road, &c. · *Held* not to be in abatement of the bill, being a suit for recovery of damages for past trespasses, which is a different cause of action from a bill to prevent future trespasses.

November 20th 1867.　Before THOMPSON, STRONG, READ and AGNEW, JJ.　WOODWARD, C. J., absent.

Appeal from the decree of the Court of Common Pleas of *Lawrence county*.　In Equity.　No. 151, to October and November Term 1867.

William Stewart and Samuel Foltz filed their bill in September 1866 against James Rhodes.

The bill states :—

1. That the complainants owned in fee a parcel of land in East

Newcastle 80 feet on Pittsburg street, and extending back 215 feet to a 20 feet wide alley, and are also seised of one-half the alley in fee—the alley laid out by former owners of a larger piece of land, laid out by them in lots, of which the complainant's lot is one—and dedicated to the free and unobstructed use of those who might become owners of lots for passing on foot, or with horses, &c.; that the complainants have so used the alley for seventeen years, and that its free and unobstructed use is of great value to them, and indispensably necessary to the reasonable enjoyment of their lot, which they have fitted up for a permanent habitation for themselves and their familes.

2. That the defendant being the owner of coal-mines, intended to construct from them to the Shenango Iron Works, at Newcastle, a distance of three miles, for his own private and exclusive use and emolument, a locomotive railroad to transport his coal; that on the 7th of May 1866, against the consent of the plaintiffs, and without authority of law, he entered the alley and freehold of complainants, placed thereon cross-ties 8 feet in length, fastened iron rails on them, and established a railroad of the gauge of $3\frac{1}{2}$ feet, and has still maintained it, obstructing the use of the alley, &c.

3. That the defendant is proceeding to complete the construction and equipment of the road, has placed on it a number of cars for transporting coal, and has contracted for a locomotive engine which he is about to place on it, threatening to maintain the railroad and drive his cars along the alley for an indefinite period of time, thus continuously obstructing the use of the alley, exposing the property of the complainants to injury, and endangering the lives of themselves and families; that said doings, &c., are without authority of law and contrary to equity, will work irreparable injury, &c.

The bill prayed:—1. That the defendant be restrained from driving any locomotive engine and drawing cars along the part of the road in the alley; 2. That the defendant be directed to remove that part of the railroad in the alley, &c.; 3. Further relief.

The defendant's answer stated:—

1. The incorporation of the Newcastle and Franklin Railroad Company, by Acts of the 25th of March and 8th of April 1864, subject to the General Railroad Law of February 19th 1849, to make and equip a railroad from Newcastle, in Lawrence county, to Franklin, in Venango county, with the right to connect with other railroads, and to construct lateral roads to the coal fields in Mercer, Lawrence and Butler counties, the gauge not to exceed 4 feet 10 inches, the road to be completed in ten years.

2. That the company was organized, proceeded to solicit subscriptions to their stock, made experimental surveys, subsequently adopted a location, which was in part along the alley, as men-

tioned in the bill, took other necessary steps towards building it, and they intend to complete it.

3. That the defendant is owner of coal-mines as stated in the bill, and had graded a bed for a railroad from them to Neshannock creek, near the mouth of Pyle's run, intending to extend the road along the valley of the creek to New Castle, about two miles. When about to commence this portion of the road, he learned that the New Castle and Franklin Railroad Company had already located their road on the only practicable location between the points named, and the company notified him that they would not permit him to occupy the location. He commenced negotiations with the company for the connection of their roads near the mouth of Pyle's run, and on the 27th of January 1866, an agreement was made, which was afterwards reduced to writing, executed by the parties, and dated April 3d 1866, by which he agreed to construct for the company "for their use and occupancy, and according to plans of their chief engineer, the road-bed between Pyle's run and New Castle, put the cross-ties on it, and pay the expenses of the right of way, in consideration of which he might place on the road-bed such track as would suit his use and purposes, run his locomotive and cars—the time of running and speed to be exclusively under the control of the company—to keep the track in the repair and condition which might be directed by the engineer, and give possession to the company at any time they might require, they paying the value of the road-bed, ties, right of way, &c.—one-half in the stock of the company at par, and the other in cash, and thereafter for the use of the road, pay the company a reasonable compensation. A copy of the agreement was annexed to the answer.

4. After making this agreement, the company endeavored to agree with the complainants for their damages, and being unable to agree, the company tendered their bond with sureties, which complainants refused; the bond was thereupon presented to the Court of Common Pleas, approved and filed according to law.

5. That the defendant afterwards, under the direction of the company's chief engineer, built the railroad between the points above mentioned, including the portion through the alley, under his contract with the company, and for the company; and not for his own "private and exclusive use and emolument." He has laid the track of the gauge mentioned in the bill, placed a locomotive and cars on it to transport coal, which he intends to use subject to his contract with the company and not otherwise.

6. That there is a coal field in the vicinity of the road built, and connecting with the company's road at Pyle's run, and easily accessible by it.

7. Admits the seisin of complainants as stated in their bill, but

denies that the alley is indispensably necessary for the use of their premises as averred, there being at each end and adjoining their land a wide street; that the railroad is even with the surface of the alley, and the use of the alley comparatively easy, and it is used daily, &c., denies also the exposure to injury of the premises, or the danger to life, and that any other matter in the bill material to answer is true.

8. Submits that the road was built for the New Castle and Franklin Railroad Company under their charter, and is under their control, &c.; that any decree for its removal should not be made without an opportunity to them to be heard; and that the injury to plaintiffs may be adequately compensated in damages and is therefore remediable at law, &c.

The agreement referred to in the bill was that defendant should construct for the railroad company, according to plans of their chief engineer, two miles or thereabout of the company's railroad from Shenango Iron Works up Neshannock creek to a point nearly opposite Pyle's run, &c., describing the dimensions, &c., of the road, cross-ties, &c., and that defendant should put on the ties such iron chairs as may suit his own use and purpose as thereafter mentioned; that he should give the company possession as stated in the bill; that he should run his locomotive and cars as stated in the bill, and in addition that full compensation should be made by defendant to the company for any delay or damage done to the company by coal-cars or trains running off the track, &c.

S. W. Dana, Esq., was appointed examiner.

William L. Darley, for plaintiffs, testified: he had been chief engineer of the railroad company, commencing in April 1864; he reported a route which was not adopted by the directors; he laid out the New Castle and Franklin Railroad along the alley, the width of the track occupying about five feet; he made no report to the company; the defendant was responsible to him for " doing this location," but did not employ him to locate through the alley; some of the directors personally requested him to run an experimental line through the alley at the expense of the company; he understood they were to pay the expense actually and finally; he made a verbal report to a meeting of the directors, that the road be located along the centre of the alley and intersect the original and experimental line on the bank of Neshannock creek near Croton hill; since that meeting he never had been instructed nor employed as chief engineer by that company; has not since been employed by the company; the meeting was before Rhodes made the railroad through the alley; he did not hold defendant responsible for the expense of the survey, but does for services rendered after location and during the construction; his services for construction were, in his opinion, rendered for the company

but done at the request of the defendant; there was a second preliminary survey; the directors ultimately adopted the one through the alley; the defendant built the road, as he claimed under the contract; witness located the road no further south than was necessary for the use of defendant, about 300 or 400 feet south from the termination of the location through the alley. The width of the gauge is $3\frac{1}{2}$ feet; no general passenger and freight road has so narrow a gauge; the rail is very light, 22 pounds to the yard; the road is insufficient both as to rail and width of gauge for a general passenger and freight road.

Cunningham, another witness for plaintiff, testified: The railroad is operated for no other purpose than transporting defendant's coal to his mill; new rails of 33 pounds to the yard have been put down and they now run at 12 miles per hour.

The complainants gave evidence of injury to their property, &c.

The defendant's evidence was: About August 12th 1864, the directors passed a resolution for the appointment of a committee to adjudicate the claims and expenses in running a preliminary survey, &c., and the engineer was authorized to make a map of geological discoveries, showing the advantages to accrue to stockholders and others from building the road. Subscription-books were opened, some absolute and some conditional subscriptions were made; the absolute subscriptions were not known, the conditional amounted to about $175,000; the treasurer had received $3225, which was paid between August 12th 1864 and April 1866; there had been no meeting of directors since April 3d 1866 till the day of taking testimony, January 14th 1867, when a new board of directors was elected; the company are making efforts to build the road; the only call for an instalment on the stock was October 7th 1864; the call was made to pay expenses of survey, &c.; on the 31st of October 1865 the board appointed one of its number to negotiate for the right of way on the defendant's route and to employ engineers to locate permanently and estimate the cost of the first two miles of the route, and to take such measures as should clearly give the company the right of possession.

J. W. Blanchard, who had been vice president of the company, testified: Steps were taken to stop the defendant from locating his road as he designed, and negotiations which resulted in the agreement with him; the road, as built by the defendant, diverges from the route as adopted by the company at the south end; the company's route did not pass through the alley when the negotiations were had with defendant.

H. W. Cunningham, president of the company, testified: Considerable stock had been taken lately; the company did not now contemplate incurring immediate liabilities in building the road; they were not in a condition to expend money then, and did not

6 P. F. Smith—27

intend to put it under contract till they had sufficient to insure its completion.

Darley, the engineer, was called by the defendants, and testified: that the road was to be built under the New Castle and Franklin Company's charter; that he agreed to do the engineering in his individual capacity, not as engineer of the company.

The defendant gave in evidence the application of the company to the court, setting out that they were about to construct a road; wished to occupy part of complainants' land; could not agree with them for damages, had tendered them a bond in the sum of $2000 for the payment of damages, which they had refused, and the company asked the court to approve the bond then presented.

May 1st 1866, the court approved the bond, and ordered it to be filed, &c. The complainants excepted to the approval.

No further steps appear to have been taken by either the company or the complainants for the assessment of damages.

Defendant also gave in evidence the record of an action of trespass by capias, at the suit of the complainants against the defendant and Patrick Shannon. Bail in $5000. The affidavit of Foltz, one of plaintiffs, set out their ownership of a lot in Pollock township, bounded by public highways, lots of Kuntz and others, averring great value, and that the defendant had entered the premises, ploughed up the ground, and placed timber and rails on it for the purpose of a private coal road, to be operated by steam, &c., and swearing to damages at $5000; also, the bond of defendants, according to the Act of Assembly.

The court, after hearing, denied the injunction, and dismissed the bill.

The complainants appealed, and assigned this decree for error.

*L. Taylor*, for appellants, cited Brightly's Eq. pp. 246 to 252; 2 Story's Eq. §§ 925, 926, 927; Commonwealth *v.* Pittsburg & Connellsville Railroad Co., 12 Harris 159; Bonaparte *v.* Camden & Amboy Railroad Co., 1 Bald. 222; Pittsburg *v.* Scott, 1 Barr 314; Sandford *v.* Railroad Co., 12 Harris 380.

*E. B. & E. T. Kurtz*, for appellees, cited Brightly's Eq. §§ 289, 720; 2 Danl. Ch. Pl. & Pr. 840, 843, 847, 848; 3 Greenl. Ev. § 284-5; Pusey *v.* Wright, 7 Casey 387; Eberly *v.* Groff, 9 Harris 251; Commonwealth *v.* Rush, 2 Id. 195; Borough of Frankford *v.* Lenning, 1 Am. Law Reg. 357; Biddle *v.* Ash, 2 Ashmead 211; Rhea *v.* Forsyth, 1 Wright 507; Grey *v.* Ohio & Penna. Railroad Co., 1 Grant 412; Bell *v.* Ohio & Penna. Railroad Co., 1 Casey 161; St. Helen's Smelting Co. *v.* Tipping, 5 Am. Law Reg. (N. S.) 108; Mechling *v.* Kittanning Bridge Co., 1 Grant 416; Buck Mt. Coal Co., 14 Wright 99; Reading *v.* Commonwealth, 1 Jones 196; Angell & Ames on Corp. 777 and

notes; Commonwealth *v.* Del. & Hudson Canal Co., 7 Wright 295; Plymouth Railroad Co. *v.* Colwell, 3 Id. 341; Turnpike Co. *v.* McConaby, 16 S. & R. 144; Pott's Appeal, 5 Barr 500; Martin *v.* Ives, 17 S. & R. 364; Mayor *v.* Commissioners, 7 Barr 365.

The opinion of the court was delivered, January 7th 1868, by THOMPSON, C. J.—It cannot be doubted that if the defendant, in this bill, was not fully invested with authority to do the acts complained of by the plaintiffs, he has created an intolerable nuisance as regards their property, of which they have good reason to complain, and for which they ought to have redress in some way. Impliedly conceding this, the defendant attempts to justify, under the authority of the Commonwealth, not by express grant, but by a delegation of authority from a company incorporated to build a railroad for public and general use, under the provisions of the Act of 19th February 1849. This company was incorporated by an Act of Assembly, passed the 25th of March 1864, under and by the name and style of "The New Castle and Franklin Railroad Company," authorized to build a road from New Castle, in the county of Lawrence, to the town of Franklin, in the county of Venango, a distance of about 48 miles. The authorized capital stock was to be $150,000, with the privilege of increasing it to the extent of $600,000. Shortly after the passage of the act, the company organized, and procured a preliminary survey of the line, but made no definite location then nor since. The capital stock was but partially subscribed for, and between three and four thousand dollars only, paid into the treasury. No work whatever has ever been done by the company towards building the road. All that has been done was by the defendant, if it may be regarded as work done on the road at all.

Whatever location the company had in the town of New Castle had been made eighteen months or so prior to the 3d of April 1866, the time at which the defendant's alleged right assumed a definite shape, and was not in and along the alley and by the premises of the complainant, but, as we understand, entirely elsewhere. Prior to that date the defendant was owner of a tract of mineral, or coal lands near New Castle, and was desirous of obtaining railroad facilities for bringing his coal into town, and in his answer he alleges that he was about to construct a private road beginning near his land, when he learned that his contemplated line would lie foul of the company's. What authority he had under which to construct a road we are not informed, or that he had any. But he further states that, in January 1866 he made an agreement with the New Castle and Franklin Railroad Company, which was reduced to writing on the 3d of April 1866, by which he undertook to build for the company two miles or

thereabouts of road, " commencing in New Castle, thence up the Neshannock creek, opposite Pyle's run, on the line of their road," and to grade the same suitable for the New Castle and Franklin Railroad, as regards alignment and grades, except the iron and road bed; the work to be according to the plans and specifications of the chief engineer. Embankments to be eight feet in width, and cuttings ten; cross-ties to be six by eight inches; to put on such rails, chairs and spikes as might suit his own use and purposes, and to run his own locomotives and cars on the track thus to be made for his own exclusive use and benefit, until such time as the company might need the possession of the same, which it could take by paying for the cost of construction, right of way, &c., &c., excepting the iron, one-half cash, and one-half in the stock of the company. The rate of speed of running the road when built to be regulated by the company, which, I presume, it was not thought worth while doing, as we see no account of it in the minutes of the board.

On the day this contract was entered into, the location previously made, was changed to the place complained of; a new location was made by the engineer of the company, although he testifies that he was not in the employ of the company after the 3d of April, the date of the contract; and he did it at the request of the defendant, who, he thinks, is resposible to him for the engineering. He is under the impression that some of the directors, or perhaps the president, spoke to him about making and staking out the location, but cannot tell who or which; that in laying out the ground along the alley, he did not fix any definite width for the road bed, but only so much as should be necessary for the road along the alley; he never made any report of the new location to the company, and at the close of his testimony on the part of the defence, he discloses the following: "I agreed to do it (the engineering) in my *individual* capacity, and not as engineer of ·the Franklin Company." Speaking of the road as constructed, he says, " the rails are very light, about twenty-two pounds to the yard." We learn, however, that they have been recently changed to a weight of about thirty-three pounds. The gauge is three and a half feet wide. "The road," he says, " is used by James Rhodes, for supplying his mill with coal. He has a little engine and a lot of coal-cars, and thus brings coal down from the coal bank. This railroad is not used or operated for any other purpose except for transporting coal by Rhodes from his bank" to his works in town.

Under these proceedings, in regard to location and the contract in question, an application was made in the name of the New Castle and Franklin Railroad Company for the appointment of viewers, under the Act of 1849, to assess the damages which were likely to ensue after comparing the advantages to the owners of property by the construction of the New Castle and Franklin

Railroad, on a distance of about 680 feet of the 48 miles of road to be made. Bonds were prepared to secure damages to the several owners on this territory, and approved by the court, but no viewers were appointed, that we can discover. Whereupon the defendant, upon a given day mentioned, 7th of May 1864, graded, built and constructed the road along the alley in question, and how much further we are not informed, putting rails of the size just mentioned on a track of three and a half feet in width, and grading the road-bed of the width of about five feet. The engineer, in his testimony, declares that he does not know of any such gauge as three and a half feet for general railroad purposes, as contemplated by the Act of 1849, and he might have well added, " or any such structure."

The railroad company have never attempted the construction of any portion of their road other than the piece made by Rhodes, if that may be regarded at all. The president testifies " that they have not yet been in a condition to incur *any liabilities* in prosecuting the work, because *they do not intend* to put the work under contract until, in the opinion of the board, we have sufficient to insure its completion."

This illustrates, in rather a remarkable manner, the object in view in obtaining the possession of the ground by the defendant. If a sufficiency of means to build the entire road should never be obtained, the defendant is to have and use as a private railroad, the ground in question, for the remaining portion of the time within which the company are to build their road, to wit, ten years, and as much longer as the legislature may extend the time, in consideration of the construction of the portion in question, I presume ! The defendant, assuming to be clothed upon with the franchises of the corporation, claims to be justified in taking private property, with all the attendant disadvantages to the owners, for his own private purposes and uses exclusively.

We have not time, or is it necessary, to discuss more at length the facts presented in this case. They are all of one complexion. They exhibit in detail and in entirety, a case in which it seems impossible to arrive at any other conclusion, than that the proceedings and the construction of this little piece of road in the manner described, was not intended as a part construction of the important undertaking with which the corporation were intrusted by the state—the building of a road to be used by the public from New Castle to the town of Franklin, which the chief engineer, in his first and only report, informed the public was much needed, and destined to become the medium of transit for millions of barrels of oil, millions of tons of coal, and thousands of passengers—but merely colorable, with a view to put the defendant in possession of a right of way on which to build his own private railway, solely for the use of his mills and machinery, and in which the public could have no advantage whatever. There

is no plan on which such a result can be achieved, without the violation of the principles of the constitution and the rights of the citizen. Germain to this view in principle, is Jessup *v.* Loucks, decided at the last term of this court for the Middle District, 5 P. F. Smith 350.

Perhaps, however, inasmuch as the corporation is not a party to the bill, the view we might take of the contract in this case, if it were, is not proper to be taken now. But this will not and ought not, to prevent us from protecting the plaintiff's right to equitable interference on other grounds. The corporation could not transfer its franchise, granted to benefit the public, to enable a private party to construct and maintain a private road for his own private use and benefit: Jessup *v.* Loucks, *supra.* If the law be so, the defendant in running the road in question, interrupting the plaintiff's right of free passage in the alley, and creating a nuisance to the plaintiff's dwellings, has no protection under the agreement with the company, and his acts are contrary to law and prejudicial to the plaintiff's interests, and ought to be restrained.

A single trespass, or several, not coupled with circumstances indicating that they were to be repeated continuously, are generally redressed by the common-law action of damages. But when they are constantly recurring, and threaten to continue, it is well settled that they may be redressed in equity by injunction: Story's Eq. §§ 925, 926, 927; 12 Harris 159. Numerous authorities might be cited for this, but these will suffice for the present. It is an elementary principle now, and does not need support from decisions, that neither railroad corporations, nor any other, can lawfully do anything outside of the powers expressly given in their charters. The cases of the Commonwealth *v.* The Pittsburg and Connellsville Railroad Co., 12 Harris 159, and The Commonwealth *v.* The Erie and North East Railroad Co., 3 Casey 339, contain the doctrines and the authorities very fully in support of this.

It is equally well settled that charters are to be strictly construed: what is granted may be exercised but nothing is to be taken by implication. The grant of corporate authority is a trust, and to be executed in the same spirit of fairness towards the public, as it would be by the state herself, and hence it may not be sold or assigned without express authority. The corporators undertake to stand in the shoes of the commonwealth, and what they have undertaken to do they must do; they cannot alienate authority and control in favor of private parties, or to agents responsible or irresponsible. If the New Castle and Franklin Railroad Company, had power to let the portion of their road in question, to be constructed and used by a private party for private uses exclusively, for an indefinite period, there is nothing to limit the principle to one such contract; there might just as well be fifty, and the whole line be farmed out to private purposes, in

[Stewart's Appeal.]

manifest disregard of the duty owing by the corporators to the state. The discretion which the company was to exercise in performing their undertaking under the charter, would thus pass to parties to whose discretion the state committed no charge. Authority to make such a contract, is not within the provision of the act of incorporation; and as it is without authority and against the policy of the law, it must be void. The authority to construct a road for the use of the public, cannot be turned into an authority to construct a private road. Sometimes contractors agree for the profits of running a road as far as made, and just as made, for their own benefit, but always for the purposes of its charter and never to exclude the ·public. That is not this case. The public are entirely excluded, not only by the kind of road and rolling stock on it, but by the agreement itself, and not only so, the right of eminent ·domain was exercised here, in substance and essence, for purposes that were private, and the plaintiff's property taken for such purpose. This was all wrong and requires to be redressed.

The defendant, therefore, being without right or title in the occupancy of the alley in question for the use of his railway, and the plaintiff's title in it admitted, it is manifest that the running of coal-cars in and along it with steam locomotives, several times a day, creating dirt, dust and smoke, is prejudicial to the plaintiff's property and should be prevented. We must, therefore, reverse the decree of the court below, dismissing the complainant's bill, and reinstate the same, with an order for a decree in accordance with these views and principles.

The answer containing supposed matter in abatement of the bill, viz., the pendency of a suit at law, waiving objections to the mode of presentation, is not an answer to the bill or relief prayed. That is a suit for a different cause of action, to recover damages for a past trespass and against different parties.

The bill here is to prevent future trespasses, leaving compensation for damage done, to an action at law for its recovery.

> The decree of the court below dismissing the plaintiff's bill is reversed, and the bill is ordered to be reinstated, and the court below is directed to enter a decree in favor of the plaintiffs, enjoining the defendant, his servants and agents from running cars on the railroad of the defendant, and along the alley in the bill mentioned, or by and along the premises of the plaintiffs; and to remove the rails, cross-ties and embankments, in said alley therefrom, leaving the same in as good repair, as an ordinary passage-way, as it was in when, and immediately before, the said road of the defendant was constructed, and that the respondents pay all costs of suit and of this appeal.