## Walters, Appellant, *v.* McElroy et al.

[Marked to be reported.]

*Equity—Injunction to restrain trespass—Act June 16, 1836.*

Under the act of June 16, 1836, conferring equity powers upon the court of common pleas, injunction is the appropriate remedy for the prevention of trespasses and nuisances which by reason of the persistency with which they are repeated threaten to become of a permanent character; and in such cases it is no objection to the jurisdiction of the court of equity that the injured party may have a remedy at law.

*Jurisdiction—Pleading—Answer not in denial of legal right but in evidence—Title to realty—Specific performance.*

The jurisdiction of the court is not ousted in such a case, and plaintiff remitted to a court of law to establish his legal right, by the filing of an answer setting forth an executory agreement, without consideration expressed, whereby plaintiff agreed to sell the land to defendant's predecessor, and also averring that the consideration was agreed upon by parol, and that a part of it had been paid.

The matters thus set up, not in denial of the averments of the bill, but in avoidance thereof, are purely equitable and therefore peculiarly cognizable in a court of equity.  Defendants in effect assume the same position in respect to the subject-matter of their defence that they would occupy as plaintiffs in a bill for specific performance.

### *Discretion of chancellor in weighing injury—Torts.*

The rule that a chancellor will refuse to enjoin an act when a greater injury will result from granting than from refusing an injunction, has no application where the act complained of is in itself as well as in its incidents tortious.

### *Damages—Account—Practice, equity.*

Where plaintiff's right to an injunction to restrain a continuing trespass is established, an account of damages previously sustained follows as an incident, and to avoid multiplicity of suits.

Argued Oct. 3, 1892.    Appeal, No. 241, Oct. T., 1890, by plaintiff, George Walters, from decree of C. P. Clarion Co., Jan. T., 1888, No. 1, in equity, in favor of defendants, Joseph McElroy et al.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for injunction to restrain continuing trespass.

The facts and material averments of the bill and answer are stated in the opinion of the Supreme Court.

The agreement set up in the answer as a defence was under seal, and provided that "the party of the first part [plaintiff] hereby for the consideration of one dollar in hand paid, as well as the agreements hereinafter mentioned, agree to sell and do hereby sell and convey to the party of the second part, [B. Heidrich] his heirs and assigns, all the coal and all other minerals of every kind and description and all that is found, removed and sold from, in, and under, a certain tract of land situate in the township of Madison, county of Clarion and state of Pennsylvania, [describing the premises upon which the alleged trespasses were committed,] with full right to enter said land, to dig, bore, excavate, quarry, mine and ship, build and remove, locate and build railroads over and under said land, or in any other manner to remove the same.    In consideration whereof the said party of the second part hereby agrees and binds himself to pay the first party ten cents for every ton of 2240 pounds of coal and ten cents for every ton of 2440 pounds of ore and limestone and for all that is found, removed and sold; payments shall be made monthly for all that is re-

moved and sold, and furthermore if said second party has paid royalties or made payment on minerals or payment in any manner on said land to the amount of ——— dollars, said first party agrees to make a clear deed free of all incumbrances for said land, and to give possession at once."

The answer averred, upon information and belief, that the consideration, left blank by mistake, was $5,000; that $4,000 and upwards had been paid in royalties and other payments, with willingness to pay balance. The answer further alleged erection of valuable improvements, etc., and prayed to be discharged with costs.

The case was referred to James Boggs, as master. Plaintiff, called by defendants by way of cross-examination, testified that there was no agreement as to the sale of the land, that he refused to sell it. The master reported that defendants were guilty of the acts complained of in the bill. He recommended that a decree should be entered against the defendants for $179 and costs, and that a perpetual injunction should issue as prayed for in the bill. On exceptions to the master's report, the case was referred back to him to take further testimony. The master filed a second report in which he found [" that the subject-matter of this suit is not within the jurisdiction of a court of equity, for the reason that the legal right on which plaintiff's prayer for relief rests is disputed by the defendants."] [2]

Exceptions to the master's report were overruled by the court in the following opinion, by MEHARD, P. J., of the 35th judicial district, specially presiding:

" The learned master concluded in his second report, that the subject-matter of this suit is not within the jurisdiction of a court of equity, for the reason that the legal right, on which plaintiff's prayer for relief rests, is disputed by the defendants. The soundness of the doctrine leading to this conclusion is conceded by the learned counsel for the plaintiff, but its pertinence to this case is denied. The chief point of distinction relied upon is, that the instrument, conferring on defendants whatever rights they have to the locus in quo, is at most an executory contract for the land and was a present grant of only the coal and mining rights, privileges and facilities, and that, specific performance being a peculiar subject of equity, the court has jurisdiction. But this suit was not brought for that

purpose; nor do the defendants in their answer, or cross bill, ask for specific performance of the contract. They are content, so far as the pleadings go, to abide by such execution of the contract as has already been performed. They are not here asking further performance. On the contrary, the issue is, whether their possession and enjoyment exceed their rights under the contract.

"It is earnestly and ably contended on behalf of plaintiff that the instrument under which defendants claim is not a valid contract for the conveyance of the land therein described, in as much as it omits to state the amount of consideration to be paid therefor. The determination of the question thus raised depends upon the true construction of the instrument itself; its legal effect when so construed; the conduct of the parties and privies with respect to that contract and the effect of such conduct on what might otherwise be their legal right. That issue must be determined before it can appear that plaintiff has suffered or is in danger of injury. The construction of that instrument and a determination of its legal effect is a question of much nicety and by no means free from difficulty: See Soles v. Hickman, 20 Pa. 180; Bowser v. Cravener et al., 56 Pa. 132. It calls for careful distinction between kindred cases and kindred principles. And a just determination of the whole question will evidently require a full investigation of many facts. If it should be determined in favor of defendant, this court would clearly have no jurisdiction of the subject-matter in the suit. As its determination in plaintiff's favor is precedent to his right to the remedy sought, it would be begging the question to assume jurisdiction of it, on the ground that the only adequate remedy for the supposed injury is to be had in equity: See Grubb's Appeal, 90 Pa. 228; Newcastle v. Raney, 130 Pa. 546; Mirkil v. Morgan, 134 Pa. 144. It is therefore considered that the learned master correctly concluded that this court has not jurisdiction of this suit.

["And now it is considered, ordered, adjudged, and decreed, that plaintiff's bill be dismissed at his costs; save that defendants shall file no bills for witnesses."] [1]

*Errors assigned* were (1) decree; and (2) in sustaining conclusion of master enclosed in brackets, quoting decree, etc.

*W. L. Corbett, Don C. Corbett* with him, for appellant.—The defendants were trespassers in committing the acts complained of in the bill: Brightly's Eq., par. 291, 292, 295; Allison's Ap., 77 Pa. 221; Stewart and Foltz's Ap., 56 Pa. 413; Bispham Eq. 434; Bitting's Ap., 105 Pa. 517; Bierbower's Ap., 107 Pa. 17; Harper's Ap., 109 Pa. 15, 16.

The agreement referred to in the answer was without consideration and was legally incomplete and void: Soles v. Hickman, 20 Pa. 182–3; Eargood's Est., 1 Pear. 399; Ferguson v. Stavers, 33 Pa. 413; Mellon v. Davison, 123 Pa. 298; Troup v. Troup, 87.Pa. 151; Monahan v. Colgin, 4 Watts, 436.

Even had there been a consideration fixed at the time of the agreement, the contract would have been within the statute of frauds, being in part in writing, and the consideration parol: Tripp v. Bishop, 56 Pa. 424. In the present case there was no possession or evidence of performance to bar the statute. Defendant's possession was only for the purpose of mining, plaintiff's possession being joint with him. That is not sufficient: Morelan v. Morelan, 121 Pa. 573; Frye v. Shepler, 7 Pa. 91.

The evidence in the present case did not show full payment of the purchase money alleged in the answer on information and belief, and plaintiff, in the absence of full payment, even if the contract was operative, would not have been entitled to enforce specific performance: Orne v. Kittanning Coal Co., 114 Pa. 172.

The rights in dispute raised by the answer were equitable and not legal ones, and the court should have decided them without referring them to another jurisdiction: Baker v. Williamson, 2 Pa. 119; Dale v. Roosevelt, 6 Johns. 257; Johns v. Erb, 5 Pa. 237.

*John W. Reed, Harry R. Wilson* with him, for appellee.— The agreement referred to in the answer is based on sufficient consideration. Its nominal consideration was one dollar; it provided for royalties and was under seal. If the paper was insufficient to show consideration, this defect could be supplied by parol evidence: White v. Weeks, 1 P. & W. 486; Jack v. Dougherty, 3 Watts, 151; Buckley's Ap., 48 Pa. 491; Bowser

v. Cravener, 56 Pa. 139.    Indebitatus assumpsit will lie for the purchase money of land: Siltzell v. Michael, 3 W. & S. 329.

In equity a decree is not of right, but of grace, and a chancellor will refuse to enjoin, if in conscience it appear he would do greater injury by enjoining than by leaving the party to his redress by a court and jury: Richard's Ap., 57 Pa. 105; Rhea v. Forsythe, 37 Pa. 507.

The title of plaintiff must be established at law before he can resort to a chancellor: North Pa. Coal Co. v. Snowden, 42 Pa. 488; Grubb's Ap., 90 Pa. 228; Ferguson's Ap., 117 Pa. 426; Duncan v. H. & G. Iron Works, 136 Pa. 478; Washburn's Ap., 105 Pa. 480; Leininger's Ap., 106 Pa. 398; Phila. v. Brosius, 2 Leg. Rec. 312; Wilkesbarre & Seneca Lake Coal Co. v. Elliott, 2 Luz. L. Reg. 31; Mirkil v. Morgan, 134 Pa. 144; New Castle v. Raney, 130 Pa. 546; Pusey v. Wright, 31 Pa. 387; Brown's Ap., 62 Pa. 17; Jordan v. Woodhouse, 5 Luz. L. Reg. 141.

OPINION BY MR. JUSTICE HEYDRICK, October 31, 1892.

The principal question in this cause is one of jurisdiction. The plaintiff averred that he was the owner in fee of a tract of land situate in Madison township, Clarion county, and had for certain considerations sold all the coal and minerals therein to one B. Heidrich or to B. Heidrich & Company, together with the right to enter upon the said lands to mine and remove the coal therefrom.    He further charged that after a large amount of coal had been removed under and in pursuance of the said grant, mining operations had ceased, and that thereafter the defendants, claiming under B. Heidrich & Company, had entered and made a drift through and under his land into the coal in adjoining lands and laid down a tramway therein, and were, without his consent, carrying coal from the adjoining lands through and over his land; depositing thereon dirt and débris from mines in adjoining lands, and draining water from the said mines upon his land.    These acts were charged to be continuous and harassing, and to cause the plaintiff irreparable injury; and the prayers of the bill were for an injunction, and for an account of the damage sustained.

Upon the face of the bill the court had jurisdiction and the plaintiff was clearly entitled to the relief which he demanded.

By the 13th section of the act of 16th of June, 1836, made general as to the courts of common pleas throughout the commonwealth by the act of 14th of February, 1857, P. L. 39, it was enacted that "The Supreme Court when sitting in banc in the city of Philadelphia, and the court of common pleas of the said city and county shall have the power and jurisdiction of courts of chancery so far as relates, . . . . to the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals." Under this section it has been repeatedly and uniformly held that injunction is the appropriate remedy for the prevention of trespasses and nuisances which, by reason of the persistency with which they are repeated, threaten to become of a permanent nature : Commonwealth v. Pittsburgh & Connelsville Railroad Company, 24 Pa. 159; Scheetz's Appeal, 35 Pa. 88; Stewart's Appeal, 56 Pa. 413; Masson's Appeal, 70 Pa. 26; Allison's Appeal, 77 Pa. 221; Bitting's Appeal, 105 Pa. 517. It is the appropriate remedy for such torts because they are within the letter and the spirit of the statute, and it is no objection that the injured party may have a remedy at law. In such cases the legal remedy may be and usually is wholly inadequate. The damages are frequently difficult of computation, and where they may be readily assessed it will often happen that the expense of a recovery will exceed the amount recoverable for any one of the successive trespasses. It was therefore a wise provision of the legislature that enabled the courts to put an end by a single decree to such controversies as are presented in this record, and the jurisdiction ought not to be abdicated. From this it is not to be inferred, however, that injunction is the appropriate remedy for a single trespass, or for any number of trespasses in the absence of a threat either express or inferable from the manner of their commission that they will be repeated.

It is, however, contended that the plaintiff's right was denied by the answer, and that this denial ousted the jurisdiction. The plaintiff's title being purely legal, a denial of it would undoubtedly have the effect claimed, but an examination of the answer will show that it cannot be fairly said to put in issue any of the material averments of the bill. Con-

ceding the plaintiff's title, the defendants set up by way of defence a paper bearing his signature, which, if it amounts to anything in respect to the subject of the present contention, is an executory agreement, without consideration expressed, to sell to B. Heidrich & Company, under whom they claim, the land upon which the acts complained of were committed, and aver that a consideration of five thousand dollars was orally agreed to be paid therefor at the time the writing was executed, and that part thereof has been paid to the plaintiff. The matters thus set up, not in denial of the averments of the bill, but in avoidance thereof, are purely equitable, and therefore peculiarly cognizable in a court of equity. By confessing, as they substantially do, the case made in the bill, and setting up the incomplete writing and its alleged oral complement, the defendants became actors, and in effect assume the same position in respect to the subject-matter of their defence that they would occupy as plaintiffs in a bill for specific performance. In such case it would not be contended for a moment that objection could be made to the jurisdiction, or that the parties ought to be sent to a court of law for the determination of the question whether such contract had been made and ought to be specifically performed. But it can make no possible difference that the matter upon which the court is required to pass comes from a defendant instead of a plaintiff: the nature of the controversy remains the same.

The court having jurisdiction of the subject of the controversy there is but little difficulty in respect to the result which ought to have been reached. The agreement so far as it is in writing by which the defendants claim that their predecessors purchased the land is in respect to that matter nudum pactum. More than that, the blank in it indicates that it is incomplete; that something had been omitted either through inadvertence or because it had not been agreed upon. Manifestly, therefore, it is not self-sustaining, and without more no court would enforce specific performance of it. As against the purchasers, specific performance could not be decreed for the obvious reason that there is nothing upon the face of the paper from which it can be determined what the purchasers ought upon their part to perform: Soles v. Hickman, 20 Pa. 180. The defendants might, however, upon the authority of

Bowser v. Cravener, 56 Pa. 132, and Tripp v. Bishop, Id. 424, show, if they could, by parol evidence, that B. Heidrich & Company had by a cotemporaneous oral agreement undertaken to pay a sum certain for the land, and that part of such sum had been paid, and tender payment of the residue. Recognizing the necessity of showing such agreement and payment they undertook to make the necessary proof by calling the plaintiff, but they not only failed to show that a consideration had been agreed upon, at, before or after the execution of the writing, but did show that so much of the writing as relates to a sale and purchase of the land was never intended to be operative. This left them without any defence whatever. To extricate themselves from this difficulty the defendants say that the plaintiff's land is little worth, while they are engaged in a great mining industry which will be paralyzed if they shall be restrained from a continuance of the acts complained of, and that in equity a decree is of grace and not of right, and, invoking the principle that a chancellor will never enjoin an act when by so doing greater injury will result than from a refusal to enjoin, they ask that the plaintiff be turned over to his remedy at law. The phrase " of grace " predicated of a decree in equity had its origin in an age when kings dispensed their royal favors by the hands of their chancellors, but, although it continues to be repeated occasionally, it has no rightful place in the jurisprudence of a free commonwealth, and ought to be relegated to the age in which it was appropriate. It has been somewhere said that equity has its laws as law has its equity. This is but another form of saying that equitable remedies are administered in accordance with rules as certain as human wisdom can devise, leaving their application only in doubtful cases to the discretion, not the unmerited favor or grace of the chancellor. Certainly no chancellor in any English speaking country will at this day admit that he dispenses favors or refuses rightful demands, or deny that when a suitor has brought his cause clearly within the rules of equity jurisprudence, the relief he asks is demandable ex debito justitiæ, and needs not to be implored ex gratia. And as to the principle invoked, that a chancellor will refuse to enjoin when greater injury will result from granting than from refusing an injunction, it is enough to observe that it has no application

where the act complained of is in itself as well as in its incidents tortious.   In such case it cannot be said that injury would result from an injunction, for no man can complain that he is injured by being prevented from doing to the hurt of another that which he has no right to do.   Nor can it make the slightest difference that the plaintiff's property is of insignificant value to him as compared with the advantages that would accrue to the defendants from its occupation.

The plaintiff's right to an injunction being established, an account of the damages heretofore sustained follows as an incident, and to avoid a multiplicity of suits : McGowin v. Remington, 12 Pa. 56; Souder's Appeal, 57 Pa. 498; Allison's Appeal, 77 Pa. 221.   The master's first report ought, therefore, to have been confirmed.

And now, Oct. 31, 1892, the decree of the court below is reversed and the plaintiff's bill is reinstated, and it is ordered, adjudged and decreed that a perpetual injunction issue as prayed for in the plaintiff's bill.   And it is further ordered, adjudged and decreed, that the defendants pay to the plaintiff the sum of $179, being the damages found by the master in his first report, with interest thereon from the 14th day of April, 1890, together with the costs of suit, including the costs of this appeal, and that the record be remitted to the court below for the purpose of enforcing this decree.