632 A.2d 9

Mary T. ECKERT

v.

Victor C. QUERRY and the Pennsylvania Department of Transportation (Three Cases).

Appeal of PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, Appellant (Three Cases).

Commonwealth Court of Pennsylvania.

Argued June 14, 1993.

Decided Sept. 13, 1993.

Reargument Denied Nov. 5, 1993.

Brian H. Baxter, Deputy Atty. Gen., for appellant.

Richard M. Serbin and Edward Graboski, for appellees.

Before COLINS and McGINLEY, JJ., and LORD, Senior Judge.

COLINS, Judge.

The Department of Transportation (DOT) appeals three orders of the Court of Common Pleas of Blair County (trial court). In the order appealed at No. 1663 C.D.1992, the trial court, *inter alia,* granted DOT's motion to mold the verdict and granted Mary Eckert's (Eckert) motion for delay damages. In the order appealed at No. 1664 C.D.1992, the trial court denied DOT's motion for post-trial relief. In the order appealed at No. 1835 C.D.1992, the trial court amended its prior order to substantially increase its award of delay damages to Eckert.

Eckert was a passenger in an automobile operated by Victor C. Querry (Querry). Querry was driving on State Route 4019 when he lost control of his vehicle, crossed the center line, and struck another vehicle. Querry's vehicle continued moving, went down an embankment, and stopped on a residential property. Thereafter, Eckert filed a personal injury lawsuit against Querry and DOT. In her complaint against DOT, Eckert averred that DOT was negligent for permitting a shoulder drop-off to exist along the roadway and for failing to install a guardrail adjacent to the roadway.

The trial court conducted a jury trial and, at the conclusion of that trial, the jury found for Eckert and awarded her $1,045,000.00 in damages. The jury determined that DOT was 85% negligent and that Querry was 15% negligent. Also, the jury returned a verdict on special interrogatories finding that DOT had notice of a dangerous condition on the berm of the road prior to the accident; that DOT should have completed a written memorandum making note of a complaint about the condition of the berm; that DOT was negligent for failing to install a guardrail along the roadway; and that the absence of a guardrail was a substantial cause of Eckert's injuries.

DOT filed a motion to mold the jury's verdict and filed a motion for post-trial relief. In its motion to mold the verdict, DOT argued first, that the jury's verdict should be reduced under the terms of a joint tortfeasor release executed by Querry and Eckert and second, that the verdict should be reduced to the statutory limit of $250,000.00. In its motion for post-trial relief, DOT argued that it should be awarded a new trial, because the trial court improperly excluded relevant evidence and did not properly instruct the jury. In addition to the motions filed by DOT, Eckert filed a motion asking the trial court to grant her delay damages under Pa.R.C.P. No. 238.

On July 21, 1992, the trial court issued two orders deciding the aforementioned motions. One order granted DOT's motion to mold the verdict, reducing the entire jury award by $100,000.00 under the terms of the joint tortfeasor release and further reducing Eckert's award to $250,000.00 as required by. Section 8528 of the Judicial Code (Code), 42 Pa.C.S. § 8528. In that same order, the trial court granted Eckert's motion and awarded her approximately $95,000.00 in delay damages. The other order denied DOT's motion for post-trial relief.

Thereafter, Eckert filed a motion for reconsideration of the delay damages awarded to her, asserting that those damages should have been calculated on the entire jury award in accordance with our Supreme Court's decision in *Woods v. Department of Transportation*, 531 Pa. 295, 612 A.2d 970 (1992). In light of *Woods*, the trial court issued an order on August 17, 1992, increasing Eckert's delay damages to $362,-000.00.

DOT raises nine issues for this Court's review: (1) The trial court erred in permitting individuals who live near the accident scene to testify about prior accidents at that location, while excluding from evidence official highway accident records showing no prior accidents at that location; (2) the trial court erred in permitting individuals who live near the accident scene to testify as to the condition of the shoulder of the roadway, while excluding from evidence an official survey finding the shoulder of the road in good condition; (3) the trial

court erroneously excluded evidence showing that Eckert and Querry were intoxicated and excluded the factual foundation for the testimony of a toxicologist, Dr. Charles Winek; (4) the trial court made erroneous evidentiary rulings at trial that (a) a police officer did not file a highway condition report concerning the accident location, (b) DOT's assistant maintenance manager could not testify concerning the amount of time in which a shoulder drop-off condition may develop, and (c) excluded evidence of weather conditions at the accident scene prior to the date of the accident; (5) the trial court erred in permitting Eckert's expert, Lance Robson, to testify with regard to the shoulder of the roadway and in permitting him to testify as to the aggravation of Eckert's injuries, when he did not possess medical expertise; (6) the trial court improperly excluded portions of the testimony of DOT's expert, Dr. Hugh Davidson; (7) the trial court erroneously permitted Eckert to testify as to lost income, while prohibiting DOT from cross-examining Eckert on this issue, and the trial court erred in permitting Eckert's counsel to use a chart projecting lost income during closing argument that was never introduced into evidence; (8) the trial court incorrectly excluded a relevant point of charge concerning an inference of negligence when a vehicle travels on a berm; and (9) the trial court erred in assessing delay damages on the entire award and did not take into account a joint tortfeasor release executed between Eckert and Querry, when it molded the verdict.

First, we will examine DOT's contention that the trial court committed numerous evidentiary errors which prejudiced its case. Issues involving the admission or exclusion of evidence are within the sound discretion of the trial court, and we will not reverse such decisions absent a clear abuse of discretion. *United States Fidelity & Guaranty Company v. Royer Garden Center & Greenhouse, Inc.,* 143 Pa.Commonwealth Ct. 31, 42, 598 A.2d 583 (1991), *petition for allowance of appeal denied,* 530 Pa. 663, 609 A.2d 170 (1992). Moreover, a ruling on evidence does not constitute reversible error, unless the complaining party is harmed by the error. *Id.*

With regard to the numerous evidentiary errors asserted by DOT in issues 1 through 7, we have reviewed the record, and we find nothing indicating that the trial court abused its discretion in making the challenged evidentiary rulings or that any of the rulings constituted harmful error. Therefore, we affirm the trial court on these issues.

■ Next, DOT contends that the trial court erred in excluding a point of charge it proposed. A jury instruction does not constitute reversible error, unless it is harmful to the complaining party. *Commonwealth of Pennsylvania, State Police v. Howard,* 113 Pa.Commonwealth Ct. 31, 536 A.2d 476 (1988). A review of the entire charge is necessary to determine whether the trial court erred. *Id.* The proposed point of charge at issue reads as follows:

When a vehicle is being driven along a road and suddenly leaves the highway and causes harm, the jury may draw from that unexplainable fact that the operator of the automobile was negligent. *Salemmo v. Dolan,* 192 Pa.Super. 51, 159 A.2d 253 (1960).

DOT argues that the above point of charge was relevant to the question of Querry's negligence, since the events leading to Eckert's injury were initiated when Querry inexplicably drove off the road and onto the berm.

■ While DOT's proposed point of charge is legally correct, the record in this case shows that the jury found as fact that Querry was negligent. Since the jury found Querry negligent, the trial court's failure to present this point of charge to the jury did not harm DOT. Therefore, we hold that the trial court did not commit reversible error when it refused to present DOT's proposed point of charge to the jury. *Howard.*

DOT argues, however, that it was harmed by the trial court's failure to present this point of charge, because the jury would have assigned a greater percentage of negligence to Querry if it was aware of the rule of law articulated in *Salemmo.* The jury determined that Querry was 15% negligent and that DOT was 85% negligent. DOT does not con-

tend in this appeal that the trial court improperly charged the jury on the issue of comparative negligence. Hence, because the jury found that Querry was negligent, and because it is undisputed that the jury was correctly instructed on how to compare the negligence of Querry and DOT, we cannot conclude that the jury would have assigned a greater percentage of negligence to Querry had it been presented with the point of charge in question. Therefore, this argument must fail.

■ DOT contends that the trial court erred in amending its July 21, 1992 order to increase the award of delay damages to Eckert from $95,946.94 to $362,686.19. The trial court increased the award of delay damages to Eckert in accordance with our Supreme Court's decision in *Woods*. In *Woods*, the Supreme Court held that delay damages, authorized by Pa. R.C.P. No. 238, are to be calculated based on the total jury award, rather than the $250,000.00 limit on damages recoverable against a Commonwealth party contained in Section 8528 of the Code, 42 Pa.C.S. § 8528.

■ Specifically, DOT argues that because *Woods* was decided while the instant case was pending, the trial court erred in applying *Woods*. We disagree. In *Woods*, our Supreme Court clarified the application of Pa.R.C.P. No. 238 to cases involving Commonwealth parties. Pa.R.C.P. No. 238 applies retroactively to all cases pending on appeal as of November 7, 1988, the date on which the new version of the rule was adopted. *Conner v. Munsey*, 533 Pa. 143, 620 A.2d 1103 (1993). Further, a court decision construing a statute is applied retroactively to cases arising from the time of the enactment of the statute, unless vested rights are affected. *Baker v. Aetna Casualty & Surety Company*, 309 Pa.Superior Ct. 81, 454 A.2d 1092 (1982), *overruled on other grounds by Antanovich v. Allstate Insurance Company*, 320 Pa.Superior Ct. 322, 467 A.2d 345 (1983), *affirmed*, 507 Pa. 68, 488 A.2d 571 (1985). A court decision construing a statute is analogous, in the view of this Court, to a Supreme Court decision interpreting a procedural rule. Hence, applying *Baker* to the present case, the Supreme Court's interpretation of Pa.R.C.P. No. 238,

as clarified in *Woods*, applies retroactively to cases arising from the date on which the rule was adopted. Therefore, we hold that the trial court did not err in applying *Woods* to the instant case.[1]

DOT also argues that the trial court, when molding the verdict, erred by failing to properly apply the terms of joint tortfeasor release executed between Eckert and Querry. The parties agree that the terms of the release required the trial court to deduct $100,000.00, the amount Querry paid to Eckert in a settlement, from Eckert's award. When the trial court molded the verdict, it applied the terms of the joint tortfeasor release by subtracting $100,000.00 from the total jury award of $1,045,000.00; thus, the court reduced the jury verdict to $945,000.00. DOT asserts that the trial court should have, instead, subtracted $100,000.00 from the statutory damage cap of $250,000.00, thereby reducing Eckert's award to $150,-000.00.

Although Section 8528 of the Code limits the amount of liability of a Commonwealth party to $250,000.00 in cases involving a single plaintiff, we believe that the trial court correctly subtracted the $100,000.00 Querry paid to Eckert under the joint tortfeasor release from the total jury verdict. Joint tortfeasor releases are specifically permitted by Section 8326 of the Code, 42 Pa.C.S. § 8326. In our view, one of the purposes of that Section is to encourage litigants to settle cases. Deducting the amount of a settlement paid under the terms of a joint tortfeasor release from the statutory cap

1. Dot also argues that the trial court erred in issuing the August 17, 1992 order amending its award of delay damages, since a notice of appeal of the July 21, 1992 order granting Eckert delay damages was already filed, effectively removing this case from the trial court's jurisdiction. The record, however, shows that Eckert filed a motion for reconsideration of the July 21, 1992 order within 30 days of the date of that order. Also, the record shows that the trial court issued its order increasing the award of delay damages within 30 days from the date of that order. Pa.R.A.P. 1701(b)(3) gives a trial court the authority to decide a motion for reconsideration filed within the 30 day appeal period, regardless of the fact that a notice of appeal has been filed. Therefore, because the trial court had jurisdiction to decide Eckert's motion for reconsideration under Pa.R.A.P. 1701(b)(3), this argument must fail.

would strongly discourage a plaintiff from settling a case under the terms of such a release. *See Woods.* Moreover, subtracting the amount paid by the settling party under a joint tortfeasor release from the statutory cap could lead to unreasonable results. For example, if Eckert had settled for $250,000.00 instead of $100,000.00, subtracting $250,000.00 from the statutory cap would have reduced DOT's liability to zero. Therefore, we hold that the trial court did not err in reducing the total amount of damages the jury awarded to Eckert by the $100,000.00 settlement Querry paid to Eckert under the terms of the joint tortfeasor release.

Accordingly, the orders of the trial court are affirmed.

## ORDER

**AND NOW,** this 13th day of September, 1993, the orders of the Court of Common Pleas of Blair County in the above-captioned matters are affirmed.