Sherry WERTZ, Appellant,

v.

CHAPMAN TOWNSHIP; Chapman Township Supervisors; Robert Walizer; Dean Scott; and Robert Young.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1997.

Decided Feb. 20, 1998.

Jeffrey C. Dohrmann, Williamsport, for appellant.

Anthony R. Sherr, West Conshohocken, for appellees.

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

Sherry Wertz appeals from the orders of the Court of Common Pleas of Clinton County (trial court) which (1) denied her motion for a jury trial of her sexual discrimination suit pursuant to the Pennsylvania Human Relations Act (PHRA)[1] and (2) found in favor of Chapman Township, Chapman Township Supervisors, and Supervisors Robert Walizer, Dean Scott and Robert Young (defendants).[2] We vacate in part and affirm in part.

The questions presented on appeal are (1) whether the trial court erred by excluding certain evidence, (2) whether the trial judge exhibited a bias in favor of defendants to warrant reassigning the case to a different judge and (3) whether the PHRA creates the right to demand a jury trial.

### FACTS

In December of 1989, defendant Young[3] hired Wertz to be a road crew laborer. At trial, Wertz and her mother Patricia Stevenson, also a road crew laborer testified that Wertz was hired to replace two unreliable employees. In contrast, defendants main-

---

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951—962.2.

2. In her complaint, Wertz named as defendants supervisors, Robert Walizer, Dean Scott and Robert Young as individuals. Based upon agreement of the parties, the claims against them in their individual capacities were subsequently dismissed by order of the trial court dated April 3, 1996. However, they remained defendants in their official capacities.

3. Sometime after the taking of his deposition, but before the trial in this case, Young died.

tained, through Young's deposition testimony, that she was hired temporarily to replace her mother who was on medical leave. The trial judge resolved this factual dispute in favor of defendants stating: "there is no doubt in my mind . . . that [Wertz] was hired to take her mother's place. . . ." (R.R. at 99a).

On April 9, 1990, Wertz informed foreman Fred Gummo that she was pregnant and that she could not lift items in excess of 25 pounds. Wertz testified that in spite of this warning, or because of it, Gummo continuously harassed her by directing her to lift heavy items, making sexually degrading remarks, threatening to terminate her, isolating her from the rest of the work crew, denying her breaks, and making unfounded and unwarranted complaints about her work.

On April 15, 1990, Wertz provided defendant Walizer with typewritten notes of Gummo's discriminatory conduct. At a Township Supervisor meeting the following day, the Township Supervisors agreed that Gummo's conduct was inappropriate and instructed him to correct his behavior. After this meeting, according to Wertz's testimony, Gummo's harassment of her increased. On May 11, 1990, Wertz was terminated.

## PROCEDURAL HISTORY

Wertz originally filed an action on June 5, 1992, in the United States District Court for the Middle District of Pennsylvania, alleging various federal and state sexual employment discrimination claims.[4] On June 30, 1994, Wertz's federal claims were dismissed as time-barred, and the matter was subsequently transferred to the trial court for resolution of the remaining state law claims pursuant to the PHRA, which included: (1) discriminatory termination of Wertz because of her sex and pregnancy; (2) harassment and hostile atmosphere because of Wertz's sex and pregnancy; and (3) retaliation.[5]

On March 13, 1995, Wertz filed a motion for a jury trial, which the trial court dismissed on April 12, 1995. Immediately following the non-jury trial, held on September 25, 1996, the trial judge issued his decision in favor of defendants and granted defendants leave to file motions regarding counsel fees. On October 7, 1996, Wertz moved for post-trial relief seeking a new trial, recusal and reassignment. The trial court denied Wertz's motion on October 29, 1996. Judgment in favor of the defendants was entered on December 16, 1996. This appeal followed.[6]

## ISSUES

The Appellant presents the following issues for this court's review.

I. **Jury Trial:**

Did the trial court err by denying Wertz's demand for a jury trial?

II. **Evidentiary Issues:**

a. Did the trial court err by excluding as irrelevant budget documents, which indicated an increase in budgetary items encompassing wages, from years subsequent to Wertz's termination when admission of the documents would undermine the Township's defense that Wertz was hired to temporarily replace her mother?

b. Did the trial court err by excluding, pursuant to the Dead Man's Act, testimony of statements made by Young, even though Young had no interest in the outcome of the case?

---

4. Wertz's federal claims were brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1991, the Rehabilitation Act of 1963, 29 U.S.C. § 701, *et seq.*, 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1985(3) and the Fourteenth Amendment.

5. The trial court was satisfied that Wertz's claims under the PHRA were not time-barred because certain circumstances tolled the statute of limitations. *Wertz v. Chapman Township* (No. 793–94,

filed February 14, 1997), Statement of Reasons at 1.

6. Our scope of review when reviewing a denial of a motion for a new trial is limited to a determination of whether there has been an error of law controlling the outcome of the case, or an abuse of discretion where the ruling turns on the weight of the evidence. *Wright v. Department of Transportation*, 142 Pa.Cmwlth. 91, 596 A.2d 1241, 1243 (1991), *appeal denied*, 530 Pa. 650, 607 A.2d 258 (1992).

c. Did the trial court err by excluding as irrelevant testimony of other employees regarding a hostile work environment or discrimination or harassment against them?

d. Did the trial court err by excluding, on the basis of hearsay, Wertz's medical excuse even though it was not offered for the truth of its contents, but rather to show that Wertz had obtained the excuse and was prepared to give it to the defendants?

### III. Bias of Trial Judge:

Did the trial judge exhibit a bias in favor of the defendants to warrant reassigning the case to another judge in the event that a new trial is granted?

### Jury Trial

We first consider Wertz's claim that she was entitled to have a jury trial. Wertz essentially argues that because the PHRA provides for "legal" remedies, *i.e.*, monetary damages, she is entitled to a jury. Additionally, she argues that a claim of discrimination under the PHRA is like a tort claim for personal injuries analogous to a "wrongful discharge" suit, and as such, she is entitled to a jury because tort suits were suits at law which could be heard by a jury in England.

█ We understand Wertz's argument to be that she has a Constitutional right to a jury trial based upon Article I, Section 6 of the Pennsylvania Constitution which provides in pertinent part that

Trial by jury shall be as heretofore and the right thereof shall remain inviolate.

However, it is a cardinal principle of jurisprudence that where decision can be had on other than constitutional grounds, the court should decide the case on the nonconstitutional grounds. *Barasch v. Bell Telephone Co.*, 529 Pa. 523, 605 A.2d 1198 (1992). Thus, we look first to the PHRA to discern whether the statute itself provides a right to a jury. *See, e.g., Cox v. Keystone Carbon, Co.*, 861 F.2d 390, 392–93 (3d Cir.1988)(first look to the statute to determine whether the statute provides a right to a jury and only if the statute does not, then analyze whether the constitution requires a jury trial); *Lubin v.*

*American Packaging Corp.*, 760 F.Supp. 450 (E.D.Pa.1991).

As with all statutory construction, the starting point of analysis is with the language of the statute. The PHRA provides in relevant part that

If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act. If the *court* finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the *court* shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the *court* deems appropriate.

(emphasis added). We note initially that the legislature was free to provide the right to a jury trial under the PHRA. *See, e.g., Hoops v. United Telephone Co. of Ohio,* 50 Ohio St.3d 97, 100, 553 N.E.2d 252, 255–56 (1990) ("Where a statute sets forth a new civil right, the legislature may grant a concomitant right to jury trial, but need not do so.") However, the plain words of the PHRA do not provide to complainants a right to a jury trial. Certainly, the legislature knew how to provide for the right to a jury trial in clear and unambiguous terms. *See, e.g.,* Section 4 of the Act of May 28, 1907, P.L. 292, 50 P.S. § 944 ("If the person against whom the proceedings are taken shall demand in writing, ... a trial by jury, it shall thereupon be the duty of the said court to award an issue, framed to determine the question of fact involved, and such trial shall be granted."); 23 Pa.C.S. § 4343 ("Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by

the court in a civil action without a jury unless either party demands a trial by jury.")

If anything, the legislature's use of the language "court" in the PHRA, to indicate its intention that the "court" is to make findings whether the respondent is engaged in a discriminatory practice and that the "court shall ... order affirmative action which may include ... any other legal ... relief as the court deems appropriate", at the very least suggests that there is no right to a jury trial. In this regard, we find the reasoning of the Court in *Younis Bros. & Co. Inc. v. Cigna Worldwide Ins. Co.*, 882 F.Supp. 1468 (E.D.Pa.1994) persuasive. The Court therein stated that

> The Pennsylvania legislature has enacted several statutes where the function of the "jury" and "court" (meaning judge) are specifically distinguished. See, e.g., 50 P.S. § 944 and 42 Pa.C.S.A. § 5327(c). The language of these statutes leads me to conclude that the term "court" does not include "jury" and the legislature specifically includes the term "jury" in a statute when it wants the jury to serve as a decision maker under the statute.

*Id.* at 1474 (footnotes omitted)(construing 42 Pa.C.S. § 8371). This reasoning was also applied by the court in *Cahall v. Westinghouse Electric Corp.*, No. 86–4183, 1986 WL 14208, at *2, 1986 U.S. Dist. LEXIS 16543, at *5 (E.D.Pa. Dec. 15, 1986) when it construed the PHRA and found that the use of the word "court" evinced a legislative intent not to grant a right to a jury: "[f]rom this language, we believe it is clear that the legislature intended actions for age discrimination brought under the PHRA should be tried to the court as finder of fact rather than to a jury."

▪ Nor do we find anything in the legislative history which indicates that the legislature intended to provide the right to a jury trial. *See Murphy v. Cartex*, 377 Pa. Superior Ct. 181, 194, 546 A.2d, 1217, 1223 (1988) ("There is nothing in the specific language of [43 P.S.] § 962(c) nor in the legislative history to indicate any intent on the part of the legislature to provide for a materially different proceeding when the PHRA claims are decided, not by the Commission, but by a court of common pleas. The involvement of a jury would constitute a material difference.").

Wertz argues that because the PHRA provides legal relief and such relief is traditionally had only in courts of law as opposed to courts of equity, she is entitled to a jury trial since cases involving monetary damages were triable to a jury. Wertz suggests that presumably the legislature was aware of this historical fact and this is evidence of the intent of the legislature to provide the right to a jury under the PHRA. However, we are not convinced that the legislature's permitting the court to order affirmative action which may include legal relief, *i.e.*, monetary damages, necessarily evidences an intent on its part to require a jury trial. A monetary award of damages " 'incidental to or intertwined with injunctive relief' may be equitable." *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 571, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) *quoting, Tull v. U.S.*, 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987); *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974) ("We need not, and do not go so far as to say that any award of monetary relief must necessarily be 'legal' relief."). This rule of law that a court of equity had the power to decree damages incident to its equitable decree is firmly embedded in the jurisprudence of this Commonwealth. *Allison and Evans' Appeal*, 77 Pa. 221 (1874) (holding that it was error for the court of equity not to enter a decree for damages and to require the plaintiff to seek damages in a court of law). *See also Walters v. McElroy*, 151 Pa. 549, 25 A. 125 (1892); *State Hospital for Criminal Insane v. Consolidated Water Supply*, 267 Pa. 29, 110 A. 281 (1920); *Gray v. Philadelphia & Reading Coal & Iron Co.*, 286 Pa. 11, 132 A. 820, (1926). Thus, notwithstanding that the PHRA provides for "legal relief," such is not a sufficient basis for finding that the legislature intended the PHRA to grant a right to a jury given the historical reality that courts of equity had the power to award monetary damages.

▪ Since we cannot conclude that the PHRA provides a statutory right to a jury trial, we then must confront the question of

whether Art. I, Section 6 of the Pennsylvania Constitution requires a jury trial here.[7] As noted above, Art. 1, Section 6 provides in part that "Trial by jury shall be as heretofore and the right thereof shall remain inviolate." We, like the parties, are aware of the Superior Court's decision in *Murphy v. Cartex Corp.*, that there is no state constitutional right to a jury trial of claims made under the PHRA.[8] We agree with the Superior Court in *Murphy* that Art. 1, Section 6 only preserves the right to a jury in those cases where it existed at the time the constitution was adopted. *Murphy*, 377 Pa. Superior Ct. at 192, 546 A.2d at 1222, *quoting, W.J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission*, 191 Pa. Superior Ct. 136, 149, 155 A.2d 429, 435 (1959). In *Byers v. Commonwealth*, 42 Pa. 89, 94 (1862) our Supreme Court, called upon to construe the right to a jury trial, decided that

> None of the frames of government or constitutions under which we have lived have contemplated any extension of the right [to a jury] beyond the limits within which it had been enjoyed previous to the settlement of the state or the adoption of the constitution.... Our first constitution, that of 1776, declared that "trials by jury shall be *as heretofore.*" The Constitution of 1790, and the amended one of 1838, adopted substantially the same provision. Their language was, "trial by jury shall be *as heretofore,* and the right thereof remain inviolate." All looked to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable alike in its mode of enjoyment and in its extent. What, then, was this right thus cherished and thus perpetuated? ... Our business at present is to ascertain how far the right to a trial by jury extended—to what controversies it

was applicable. It was a right the title to which is founded upon usage, and its measure is therefore to be sought in the usages which prevailed at the time when it was asserted.

■ Thus, the proper analysis is to ask did the right to a jury trial for the claim exist at the time our State government was first formed. *See* Robert E. Woodside, Pennsylvania Constitutional Law, 143 (1985); Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 67 (1907). Thus, if Wertz were entitled to have a jury trial of her claim of sexual harassment and discrimination at the time of the formation of this Commonwealth, then she would be so entitled now. However, the "PHRA and the rights it confers were nonexistent at the time the Pennsylvania Constitution was adopted." *Murphy*, 377 Pa. Superior Ct. at 192–93, 546 A.2d at 1223. Because Ms. Wertz could not have had a jury trial of her claim at the time of the Commonwealth's formation because the cause of action, founded as it is, upon a right to be free from discrimination on· the basis of sex which was unknown at the time, she is not now entitled to have a jury trial as a matter of Constitutional law.

Ms. Wertz attempts to circumvent this historical fact by arguing that her cause of action is really analogous to a tort claim for personal injury and/or a tort claim for wrongful discharge and because the PHRA cause is analogous to a tort claim which was triable as of right to a jury at common law, she should, by reason of analogy, have a right to a jury for her claim under the PHRA. In this argument, Ms. Wertz echoes the analysis utilized by Federal courts under the Seventh Amendment. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)

7. We note that Wertz does not and indeed cannot make any claim that the Federal Constitution's Seventh Amendment right to a jury applies herein. The Seventh Amendment applies only to actions in federal court. *Minneapolis & S.L.R. Co. v. Bombolis*, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916).

8. Although, the trial court in the instant action may not have been free to decide contrary to the Superior Court's decision in *Murphy*, the parties erroneously assert that this court is bound by the

Superior Court. *See* Appellee's Brief at p. 14; and Appellant's Reply Brief at p. 10. This court is not bound by the Superior Court's precedents, although where persuasive, we are free to adopt the Superior Court's reasoning. *See, e.g., Trustees of the Presbytery of Philadelphia v. Provident Mutual Life Ins. Co.*, 685 A.2d 635, 638 (Pa. Cmwlth.1996); *Ersek v. Springfield Township*, 160 Pa.Cmwlth. 79, 634 A.2d 707 (1993); *Lincoln General Ins. Co. v. Donahue*, 151 Pa. Cmwlth. 297, 616 A.2d 1076, 1079 (1992).

("the Seventh Amendment also applies to actions brought to enforce statutory rights that are *analogous* to common-law causes of action ordinarily decided in the English law courts in the late 18th Century, as opposed to those customarily heard by courts of equity or admiralty.")(emphasis added); *Tull v. U.S.*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) ("The Court has construed this language [of the Seventh Amendment] to require a jury trial on the merits in those actions that are *analogous* to 'Suits at common law.' ")(emphasis added).

If in interpreting Art. I, Section 6 of the Pennsylvania Constitution, this court were bound to follow the federal courts' analysis of the Seventh Amendment, Ms. Wertz might have a stronger case, however, Pennsylvania jurisprudence under Art. I, Section 6 does not appear to have accepted the "analogy" reasoning of the federal courts.[9] Indeed, rather than seek analogs between causes of action and historical common law writs, Pennsylvania courts have consistently asked whether the right to a jury trial for the particular cause of action existed at common law at the time of our founding and, if such a right did not exist at the time then there is no constitutional right to have a jury hear the case. *See, e.g., Appeal of Watson,* 377 Pa. 495, 105 A.2d 576 (1954), *cert. denied,* 348 U.S. 879, 75 S.Ct. 120, 99 L.Ed. 692 (1954); *Van Swartow v. Commonwealth,* 24 Pa. 131, (1854); *In re Pennsylvania Hall,* 5 Pa. 204 (1847); *Murphy v. Cartex Corp.; Commonwealth v. Johnson,* 211 Pa. Superior Ct. 62, 234 A.2d 9 (1967); *W.J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission,* 191 Pa. Superior Ct. 136, 155 A.2d 429 (1959); *Pennsylvania Publications v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 279, 32 A.2d 40 (1943), *rev'd on other grounds,* 349 Pa. 184, 36 A.2d 777 (1944); *Commonwealth v. Marco Electric Manufacturing Corp.,* 32 Pa.Cmwlth. 360, 379 A.2d 342 (1977); *Department of Environmental*

*Resources v. Wheeling–Pittsburgh Steel,* 22 Pa.Cmwlth. 280, 348 A.2d 765 (1975); *aff'd in part and remanded,* 473 Pa. 432, 375 A.2d 320 (1977).

We find the reasoning of the following cases particularly instructive. In *Appeal of Watson,* a teacher who was discharged for mental derangement claimed that she had the right to a jury trial upon the issue of her mental derangement. The Pennsylvania Supreme Court rejected the argument noting that the statute which gave teachers tenure and enumerated the only reasons permitted for termination "conferred upon teachers rights which the common law had not accorded them. The failure to include a provision for a further right (viz. trial by jury of an issue of mental derangement) does not render the procedure unconstitutional." Likewise, here the PHRA accorded Ms. Wertz a right to be free of discrimination due to her sex, a right unknown at the common law,[10] accordingly, the failure of the PHRA to accord her a right to a jury trial is not unconstitutional.

In *Dillner Transfer Co.,* a motor carrier, ordered by the Public Utilities Commission to cease and desist from carrying certain cargo, argued that it had a right to a jury trial. The Superior Court rejected its contention noting that the "matters committed by the legislature to the Public Utility Commission were then [i.e., at the time Pennsylvania adopted Art. I, Section 6] nonexistent. Hence no right to jury trial existed which could be preserved. The legislature may withhold trial by jury from new judicial proceedings created by statute and clothed with no common law jurisdiction." Likewise here, the rights which the PHRA confer were unknown to the common law and thus no right to a jury could be preserved.

In *Department of Environmental Resources v. Wheeling–Pittsburgh Steel,* Wheeling–Pittsburgh Steel argued that it

---

**9.** That the Pennsylvania courts have not adopted the "analogy" reasoning of the federal courts is not surprising. The "analogy reasoning" has been strongly criticized as being difficult and incapable of yielding reliable results. *See, e.g. Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry,* 494 U.S. 558, 575–577, 110 S.Ct. 1339,

1350–1351, 108 L.Ed.2d 519 (1990)(Brennan, J., concurring).

**10.** *See, e.g., Murphy v. Cartex,* 546 A.2d at 1217 (The PHRA and the rights it confers were nonexistent at the time the Pennsylvania Constitution was adopted).

was entitled to a jury trial involving its alleged violation of a Department of Environmental Resources order. This court rejected the argument, citing, *inter alia, Appeal of Watson*, and reasoning that because the proceedings in the Department of Environmental Resources are wholly a creature of recent statutory law and unknown at the time of this Commonwealth's formation, Wheeling–Pittsburgh Steel did not have a constitutional right to a jury trial. Similarly, the proceedings at issue herein are purely the creature of statute, namely, the PHRA. As such, these proceedings involving rights unknown at common law do not require a jury.

■ Accordingly, because Ms. Wertz has neither a statutory or constitutional right to a jury trial, she was not entitled to have a jury trial.

### Evidentiary Issues

■ We will deal with the evidentiary issues seriatim. Issues involving the admission or exclusion of evidence are within the sound discretion of the trial court and a reviewing court will not reverse such decisions absent an abuse of that discretion. *Eckert v. Querry*, 158 Pa.Cmwlth. 421, 632 A.2d 9 (1993), *appeal granted*, 538 Pa. 676, 649 A.2d 677, (1994), *appeal dismissed as improvidently granted*, 540 Pa. 352, 657 A.2d 937 (1995). Moreover, a ruling on evidence does not constitute reversible error unless the complaining party is harmed by the error. *Id.*

Wertz argues that the trial court erred in excluding as irrelevant Chapman Township's budget for 1990. Wertz argued that if Wertz were, in fact, hired only until Ms. Stevenson returned, rather than to replace two other workers, one could reasonably expect a decrease in those budget line items for roads and streets in 1990, because the number of road crew workers would be decreased by her absence and the absence of the other crew members who were not working out and who were not being replaced. Wertz reasoned that because there was an increase in the budget line items for roads and streets, this indicated that the Township had planned on maintaining the number of road crew workers and that they budgeted for Ms. Stevenson as well as for Wertz as a replacement for the crew members who had not worked out.

■ Defendants point out that the treasurer of the Township testified to the budget line items and to the fact that the budget did not indicate how many road crew workers were to be employed. Defendants also point out that Ms. Wertz failed to show that the increase in the line items reflected costs of road crew members as opposed to other increased road or street costs. We agree with defendants. Because there is no necessary implication that an increase in the amounts budgeted in these line items reflects the number of road crew workers, we cannot conclude that the trial judge abused his discretion in excluding the budget as irrelevant.[11]

11. Wertz next alleges that the trial court erred in excluding the introduction of testimony by Ms. Stevenson recounting what Mr. Young had stated to her regarding Ms. Wertz's employment status. It appears that Ms. Stevenson would have testified that Mr. Young told her that Ms. Wertz was being hired to replace two unreliable employees. The defendants maintain that Wertz had been hired as a temporary replacement worker until Ms. Stevenson could return to work. The trial court prohibited Ms. Stevenson from testifying as to anything that Mr. Young said which did not appear in Mr. Young's deposition. The trial court stated that "I'm not going to allow you to offer testimony that doesn't appear in that Deposition. I think the dead man's rule, if nothing else, precludes you from doing that." Notes of Testimony, Sept. 26, 1996 at p. 36. Wertz argues that the trial court erred in excluding the proffered testimony on the basis of the Dead Man's Rule, 42 Pa.C.S. § 5930.

We note that the defendants do not defend the correctness of the trial court's ruling with respect to the issue of the Dead Man's Rule. Rather, the defendants assert that the trial court's exclusion of the evidence was harmless error because it was cumulative of other evidence. Namely, Wertz herself had testified that Mr. Young told Ms. Wertz that she was being hired because another employee was unreliable. Ms. Wertz counters that the trial court consistently indicated that he would not consider anything attributed to Mr. Young that was not in Mr. Young's deposition. Wertz points out that immediately after she testified as to what Mr. Young had allegedly told her, the trial court inquired if what Ms. Wertz had described as Mr. Young's statement was consistent with Mr. Young's deposition, Mr. Sherr, the defendants' attorney indi-

At trial, Wertz sought to introduce the testimony of Ms. Stevenson regarding statements which she had heard Mr. Gummo make that were degrading to women. Counsel for the defendants objected to the admission of this testimony on the grounds of relevance.[12] The test for determining the relevance of evidence is whether the evidence tends to make a fact at issue more or less probable. *Santarlas v. Leaseway Motorcar Transport Co.*, 456 Pa. Superior Ct. 34, 38–41, 689 A.2d 311, 313–14 (1997). Moreover,

> [a]n item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered.... It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without the evidence.

McCormick, *Evidence*, § 185 at p. 542 (3d ed.1984).

Wertz argues that the trial court abused its discretion in prohibiting this testimony. Wertz correctly points out that in cases arising under the PHRA, the Pennsylvania Courts apply the analysis established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for cases arising under Title VII of the Civil Rights Act of 1964. *Taylor v. Pa. Human Relations Commission*, 681 A.2d 228, (Pa. Cmwlth.1996). Accordingly, cases construing Title VII may be helpful by way of analogy to applying the PHRA.

Wertz's instant claim is that the defendants discriminated against her on account of her sex (disparate treatment claim) and created a hostile work environment. See Complaint, R.R. at p. 22a—26a. Cases constru-

ing Title VII have held that in disparate treatment cases, proof of discriminatory intent is critical. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). *Accord Action Industries Inc. v. Pa. Human Relations Commission*, 102 Pa. Cmwlth. 382, 518 A.2d 610 (1986), *appeal denied*, 515 Pa. 626, 531 A.2d 433 (1987)(employee must establish discriminatory intent for claims under the PHRA). In attempting to prove such discriminatory intent, evidence of an employer's sexual harassment of female employees other than the complainant, and evidence of disparaging remarks about women have been held to be, in general, relevant. *See Equal Employment Opportunity Comm'n v. Farmer Bros. Co.*, 31 F.3d 891, 897–98 (9th Cir.1994); *West v. Philadelphia Electric Co.*, 45 F.3d 744, 757 (3d Cir.1995).

In addition, Wertz argues that proof of discriminatory acts against other employees is relevant to proving that an employer's proffered facially nondiscriminatory reason for the action it has taken against a claimant is, in fact, pretextual and merely a mask for the real discriminatory reason for the action taken. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1086 (3d Cir.1996) ("[e]vidence of discrimination against other employees or of a hostile work environment is relevant to 'whether one of the principal nondiscriminatory reasons asserted by [an employer] for its actions was, in fact, a pretext for ... discrimination.' "), *quoting, Glass v. Philadelphia Electric Co.*, 34 F.3d 188, 194 (3d Cir.1994). Furthermore,

> to determine whether a plaintiff has proven a claim for sexual harassment based upon an intimidating, hostile, or offensive

---

cated that Ms. Wertz's account was inconsistent with Mr. Young's deposition. Wertz claims that in light of the trial court's stated intention not to consider anything attributed to Mr. Young which was not contained in the deposition, we can only assume that the trial court also did not consider her testimony as to what Mr. Young purportedly told her.

In light of the foregoing, the record simply is not clear as to whether the trial court did or did not consider the testimony of Ms. Wertz regarding what Mr. Young allegedly told her. We deem it prudent therefore to decline to address this issue.

12. The transcript reveals that Mr. Sherr, counsel for the defendants made the following objection:

> MR. SHERR: I'm going to object, Your Honor, I don't know why this would be relevant to the claim of Ms. Wertz.
> THE COURT: What's the relevance?
> MR. DOHRMANN: Your Honor, a history or pattern of sexual discrimination, sexually discriminatory comments is relevant in sexual discrimination cases, it's been held that way by many Courts showing a history or a pattern or practice of this type of conduct.

(Notes of Testimony, September 25, 1996, p. 34.)

work environment, a court must examine the totality of the circumstances. Included in the totality of the circumstances is evidence of sexual harassment directed at employees other than the plaintiff, which is relevant to show a hostile working environment. [citing cases]

*Stair v. Lehigh Valley Carpenters Local Union No. 600,* 813 F.Supp. 1116, 1119 (E.D.Pa. 1993).

We note that evaluation of the probative value of proffered evidence, *i.e.,* its tendency to make a fact in issue slightly more probable than not, involves a common sense assessment of the inferences fairly to be drawn from the evidence. Packel & Poulin, *Pennsylvania Evidence,* § 401, at p. 125 (1987). Thus, the question is: does the fact that there were alleged prior incidents of sexual harassment or inappropriate remarks by Mr. Gummo toward or about females make it slightly more likely in a common sense assessment that he would have made discriminatory remarks to, or that he would have harassed Wertz.

■ While much depends upon the temporal relationship and the similarity of the remarks/harassment alleged between the past practices and the practices at issue in the case, *see Stair, supra,* we find that Ms. Stevenson's testimony regarding Mr. Gummo's remarks was relevant under the circumstances of this case. In other words, we cannot help but to conclude that had Mr. Gummo made the discriminatory remarks heard by Ms. Stevenson, this fact would make it at least slightly more likely than not that Mr. Gummo engaged in the conduct alleged by Wertz. In this conclusion, that past discrimination against others can be relevant to more recent discrimination, this court is not alone. *See, e.g., Stair* and *Vinson v. Taylor,* 753 F.2d 141 (D.C.Cir.1985)(evidence tending to show defendant's harassment of other women working along side complainant relevant to question of whether defendant created environment violative of Title VII for complain-

ant), *aff'd,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Defendants raise several arguments in support of the trial court's exclusion of Ms. Stevenson's testimony.[13] The defendants argue that the exclusion of Ms. Stevenson's testimony, if it was error, was at most harmless error because Wertz failed in proving one of the elements of her case quite apart from the excluded testimony. The defendants urge that the error was harmless because Wertz failed to prove that Mr. Gummo's employer was negligent in failing to appropriately discipline Mr. Gummo or take adequate remedial measures. Thus, even if the testimony were admitted, Wertz still would have lost because of her failure to show that the employer did not do enough to remediate the situation. Viewing the record as a whole, we are unable to conclude that the error in excluding the testimony was harmless because we are not convinced that the record lacks evidence to permit a factfinder to conclude that Mr. Gummo's employer failed in remediating the situation. *See, e.g., Harmon v. Mifflin County School Dist.,* 684 A.2d 651 (Pa.Cmwlth.1996)(en banc), *appeal denied, appeal granted in part,* 548 Pa. 227, 696 A.2d 805 (1997) (whether the lower court commits harmless error is a question for appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that an error was harmless).

■ Because we conclude that Ms. Stevenson's testimony regarding Mr. Gummo's alleged past discriminatory remarks was in fact relevant and therefore the trial court erroneously excluded the testimony on the grounds of irrelevancy, and because we are not able to conclude that such error was harmless, we must award a new trial to Wertz.

■ Wertz further argues that the trial court erred in excluding as hearsay a medical excuse from Wertz's midwife regarding the fact that Wertz was restricted from lifting

---

**13.** The defendants argue that Ms. Stevenson's proposed testimony about what Mr. Gummo had said was inadmissible as hearsay. However, as Wertz points out, the objection at trial was based upon relevance and not hearsay, as such, any hearsay objection was waived and it cannot be raised for the first time on appeal.

anything over 25 pounds. Wertz claims that she offered the note as proof of the fact that she obtained a medical excuse and not for the truth of its content, *i.e.*, that she could not in fact lift in excess of 25 pounds. The defendants argue that the medical excuse was hearsay because Wertz sought to "introduce [it] to prove that the township supervisors knew of the limitation." Appellee's Brief at 12. To the extent that Wertz sought to introduce the note for the purpose of proving that she had obtained such a note and not for the purpose of proving her inability to lift 25 pounds, the note was not hearsay for such a purpose and, as such, should not have been excluded on hearsay grounds.

**Alleged Bias of Trial Judge**

Next Wertz argues that if we remand this case, it should be reassigned to another judge. Wertz essentially asserts that because the trial judge asked defendants' counsel if he had objections to testimony and exhibits, the trial judge was acting as an advocate. In addition, Wertz points to the judge's remarks at the time he rendered his verdict. Wertz asserts that the judge's remarks that her suit was "an abuse of the legal process" and that Wertz was trying to "make a silk purse out of a sow's ear" merit a new judge upon remand. Wertz argues that these remarks and the judge's behavior prove that he exhibited bias, prejudice and partiality so as to merit a different judge upon remand.[14]

We note that the party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice or unfairness. *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983). On this record, we cannot conclude that the trial judge's statements and behavior establish that he was biased, prejudiced or partial. We reject Wertz's suggestion that there is any analogy between the behavior of the judge in the instant case

and the behavior of the trial judge in *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985) which was so egregious that it differed in kind and not merely degree from the trial judge's behavior in the case at hand. Accordingly, we deny Wertz's request that we assign this case to another jurist.[15]

Because the trial court erred in evidentiary matters, this case is remanded for a new trial consistent with this opinion.

**ORDER**

NOW, February 20, 1998, the order of the Court of Common Pleas of Clinton County, dated September 25, 1996, finding in favor of the defendants is vacated and the trial court is instructed to conduct a new trial. The order of the Court of Common Pleas of Clinton County, dated April 12, 1995, denying a jury trial is hereby affirmed.

Jurisdiction is relinquished.

The decision in this case was reached before the death of SILVESTRI, Senior Judge.

LEADBETTER, Judge, concurring and dissenting.

I concur in the decision to order a new trial, and join in all of the majority opinion except that portion holding that the PHRA does not provide the right to a jury trial of suits seeking money damages.[1]

I fully agree with the majority that neither the Pennsylvania nor United States Constitution requires a jury trial for such actions. Moreover, the majority makes a strong argument that the PHRA's use of the word "court" suggests an intent that cases be tried to a judge sitting without a jury. Nevertheless, while I find it a very close issue, I must conclude that the legislature intended to incorporate the right to a jury when it included language providing for legal remedies.[2]

---

**14.** The defendants do not address this argument by Wertz.

**15.** This disposition does not preclude Wertz from presenting a motion to recuse, should the case be reassigned to the same judge.

**1.** We are, of course, not dealing with the *equitable* remedies which may be sought under the PHRA.

**2.** 43 P.S. § 962(c)(3).

As the majority notes, plaintiff here sought damages under the PHRA for discriminatory termination, sexual harassment, and retaliation.[3] Although not applicable to the states [4], the Seventh Amendment to the United States Constitution has long been held to require federal courts to provide a jury trial to determine such "legal" claims, *i.e.*, claims for compensatory or punitive damages. This is so whether those claims arise under common law or by statute, [*Byrd v. Blue Ridge Rural Electric Co-op., Inc.*, 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958); *Curtis v. Loether*, 415 U.S. 189, 192, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974) ] and whether the cause of action arises under federal or state law. *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963). As a result, a long line of cases in the federal courts have found a right to a jury trial for damage claims brought under the PHRA. *See, e.g., Renick v. Olan Mills, Inc.*, No. 96–0506, 1996 WL 903711, at *1, 1996 U.S. Dist. LEXIS 21103, at *1 (W.D.Pa. July 29, 1996); *Galeone v. American Packaging Corp.*, 764 F.Supp. 349, 353–54 (E.D.Pa. 1991); *Lubin v. American Packaging Corp.*, 760 F.Supp. 450, 452 (E.D.Pa.1991).

Certain of these cases have relied upon the statutory analysis of *Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), to reach the conclusion that the Pennsylvania legislature must have intended to create a jury trial right in enacting the PHRA. In *Lorillard*, the United States Supreme Court contrasted the remedial provisions of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Title VII, as originally enact-

ed, did not specify whether cases were to be tried to a jury, but since it provided for only equitable relief, it was construed to require bench trials only. *See, e.g., Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969).[5] The Court concluded that since the ADEA provides for legal as well as equitable relief, the ADEA confers on plaintiffs the right to demand a jury trial. 434 U.S. at 584, 98 S.Ct. at 872. The Court reasoned that Congress, aware of the Seventh Amendment significance of providing for legal relief, must have intended to grant the right to a jury trial. Thus, a number of federal decisions have, by analogy to *Lorillard*, reached the conclusion that *our* legislature, in providing for legal relief, must have intended to provide for a jury trial. I am not persuaded that *Lorillard* has such direct application to Pennsylvania legislation. As the majority correctly points out, the only relevant inquiry dictated by Pennsylvania constitutional law is whether the cause of action existed at the time our state constitution was enacted. Since the Seventh Amendment does not apply to the states, and the distinction its interpretation has drawn between legal and equitable remedies is therefore irrelevant to Pennsylvania law, I find it difficult to impute to our legislature the same reasoning imputed to Congress in *Lorillard.*

Nonetheless, I do not believe that our legislature was unmindful of the Seventh Amendment, nor of the significance of the distinction between equitable and legal remedies under federal law. As the Superior Court has noted, the PHRA was patterned largely after Title VII,[6] except for the inclusion of legal relief. The legislature surely foresaw that PHRA claims would sometimes be joined with Title VII claims in the federal

---

**3.** Such damages are recoverable under the PHRA. *Pennsylvania Human Relations Comm'n. v. Zamantakis*, 478 Pa. 454, 459, 387 A.2d 70, 73 (1978).

**4.** *See Melancon v. McKeithen*, 345 F.Supp. 1025, 1027 (E.D.La.1972), *aff'd. sub nom. Davis v. Edwards*, 409 U.S. 1098, 93 S.Ct. 908, 34 L.Ed.2d 679 (1973) (per curiam) (stating that civil jury trials are "not so fundamental to the American system of justice as to be required of state courts by due process"). *See also Colgrove v. Battin*, 413 U.S. 149, 169 n. 4, 93 S.Ct. 2448,

2460 n. 4, 37 L.Ed.2d 522 (1973) (Marshall, J., dissenting).

**5.** In 1972, Congress amended Title VII to provide for bench trials exclusively. 42 U.S.C. § 2000e–5(f)(4). Subsequently, in 1991 Congress further amended Title VII to provide for "legal" as well as "equitable" damages and simultaneously granted to plaintiffs the right to demand a jury trial. 42 U.S.C. § 1981a(c)(1).

**6.** *Murphy v. Cartex*, 377 Pa. Superior Ct. 181, 195, 546 A.2d 1217, 1224 (1988).

courts and sometimes be tried in combination with other state law claims in our courts. Yet if we adopt the conclusion of the majority, we recognize a system whereby the *same* cause of action, if tried in state court must be decided by a judge alone, yet in federal court will be heard by a jury upon the demand of either party. This is not an insignificant difference. The high value placed upon the right to trial by jury is rooted in our deepest traditions, and it is difficult to believe that our legislature intended to accord that right to litigants who sought relief in federal courts, but deny it to those who came to our courts of common pleas.

Moreover, such a dichotomy works a particular prejudice on two categories of parties. First, it places a disproportionate burden on plaintiffs from rural areas far from the federal courthouses, who would have to expend significantly more time and money (and, in many cases, seek the assistance of counsel outside their local area) simply in order to obtain a jury trial. Second, this ruling deprives all defendants of any choice in the matter. By selecting the forum in which to bring their claims, plaintiffs will have the absolute power to determine whether the case will be tried to judge or jury.

I simply cannot impute to our legislature the intention to create such an anomalous and inequitable result. For these reasons, I would upon remand direct the court of common pleas to allow a jury trial of this matter.